# Exhibit A



# Agreement

made this **twelfth** day of September 19 **38** , by and between

**JOHN STEINBECK**

whose address is **care of McIntosh & Otis, Inc., 18 East 41st Street, New York, N. Y.**

the Author and/or Proprietor , party of the first part (hereinafter in either case called the "Author"), and THE VIKING PRESS, INC., of 18 East 48th Street, New York, N. Y., party of the second part (hereinafter called the "Publishers"), respecting a work of **fiction** at present entitled " **THE LONG VALLEY,** consisting of **short stories**

(hereinafter called "Said Work"), whereby it is mutually agreed between the Author and the Publishers as follows:

## PART ONE

*Delivery of manuscript*

1. The Author agrees to deliver the finished work to the Publishers by **(already received)** and hereby grants and assigns to the Publishers the sole and exclusive right to publish said work in volume form in the English language **in the United States of America and Canada,** *(As ....................... 10/17/.... )*

*Publication rights granted*

and also grants to the Publishers such further rights as are specified in Paragraph 5 hereafter. The phrase "in volume form" shall be defined as meaning publication of the work as a whole, or substantially complete, as a unit or at one time.

*Agreement to publish*

2. The Publishers agree to publish said work in volume form at their own expense, in the style or styles and at the price or prices which they deem best suited to its sale, within **six** months from the date of receipt of the finished manuscript, but they shall not be responsible for delays caused by strikes, fires, or other circumstances beyond their control.

*Copyright*

3. The Publishers shall take all steps which may be necessary to take out copyright in the name of **John Steinbeck** and thereby secure their own rights and those of the Author under the United States Copyright Acts, and shall take out renewals whenever they fall due, if the copyright is in their name; but if the copyright is in the name of the Author, he agrees to take out such renewals.

*Payment:*

4. The Publishers agree to pay the Author as follows:

*regular sales*

(a) A royalty of **17½** per cent of the amount which the Publishers charge for all copies sold of said work, less copies returned, with no deduction for cash discounts or bad debts, **up to and including 3,000 copies; 20 per cent on all copies sold over 3,000 and up to 5,000; 25 per cent on all copies sold thereafter,** with the following exceptions:

*export and special sales*

(b) On all copies sold for export at a reduced price, and on all copies sold in quantities to justify a special discount of 60 per cent or more from the catalog retail price, such as sales to Canada, or sales in bulk to recognized Book Clubs or Reading Circles, a royalty of **10** per cent of the amount which the Publishers charge, as qualified above; but if said work is sold to a recognized Book Club which pays an outright sum for a license to publish said work for distribution to its members or subscribers, the Author shall receive 50 per cent of the amount received by the Publishers;

*book club sales*

*text-book sales*

(c) On copies of any text-book edition at a retail price lower than that of the regular trade edition, issued for sales in bulk to educational institutions, a royalty of 10 per cent of the amount which the Publishers charge, as qualified above;

*overstock*

(d) On copies of overstock which the Publishers, after one year from the first publication of the said work, deem it expedient to sell at "remainder" prices, i.e., at less than one-half the catalog retail price, a royalty of 10 per cent of the amount which the Publishers charge, except that when such copies are sold at or below cost, no royalty shall be paid;

*cheap or reprint edition*

*No. ....*

*4/15/91,*
*10/9/84*

*English edition*

(e) On all copies sold of any cheap edition which they publish, after one year from the first publication of said work, at a price substantially less than the original retail price, a royalty of 10 per cent of the amount which the Publishers charge, as qualified above; but if the Publishers shall arrange for the publication of such cheap or reprint edition by another publisher, the Author shall receive 50 per cent of the amount received by the Publishers;

~~(f) On all copies sold of any English edition or foreign publishers edition which they publish, after one year from the first publication of said work, at a price substantially less than the original retail price of such copies or the publication of such cheap or reprint edition by another publisher, the Author shall receive 50 per cent of the amount received by the Publishers~~

*to spoken word*
*for the text*

*Additional rights:*

(f)  The Publishers shall pay as an advance against all earnings under this contract the sum of Two Hundred and Fifty Dollars ($250.00) on delivery of the manuscript and the further sum of Two Hundred and Fifty Dollars ($250.00) on publication date; for the accrued royalties to publication date (less a reasonable allowance for copies that may be returned), whichever sum may be the higher.

5. The additional rights which the Author grants exclusively to the Publishers in Paragraph 1 above, and the division of any and all sums accruing from the sale of these rights, are as follows:

*mechanical rights reverted to agent*

(a) Reprinting in whole or in part in newspapers, magazines, anthologies and other volumes, second serialization, syndication, radio-broadcasting, and mechanical reproduction, 50 per cent to the Author and 50 per cent to the Publishers;

*anthologies, second serial, etc.*

~~(b) ......~~

*translation*
*first serial*

~~(c) First serialization ......~~

*motion picture and dramatic*

(d) Motion picture and/or dramatic rights,  75  per cent to the Author and  25  per cent to the Publishers.

*See 14/4*

*reverted to Werth...*

All rights not herein specifically granted to the Publishers are reserved by the Author.

*Option on other work*

6. The Author hereby grants to the Publishers the option to publish the Author's next four ✱ book-length works of fiction of 40,000 words or more in length on the terms of the present agreement. If, however, a work of fiction of less than 40,000 words shall be published by itself in a volume, at a retail price of $2.00 or more, such book shall be considered one of the books under this contract. The publishers shall exercise this option within two months of receipt of the completed manuscript, except that they shall not be required to exercise it until at least one month after the publication of the next preceding book, and they shall publish the new book within one year of the date of its acceptance. If one of the option books should not be accepted, the Publishers' option on subsequent books shall become null and void.

PART TWO

*Author's failure to deliver MS.*

1A. Default in delivery of manuscript by the date above stated may be deemed cause for the termination of this agreement if the Publishers should so elect, and, in such case, they shall have the right to recover from the Author any and all amounts which they may have advanced to him; but should the Publishers consent to accept the manuscript at a later date, they shall not be required to publish within the limit of time above stated.

*Index, illustrations, etc.*
*corrections*

2A. If an index is required or if drawings, photographs, tables, maps, charts or other illustrative matter should be deemed necessary by both parties, the copy shall be prepared or supplied by the Author or, in his default, by the Publishers at his expense. If the Author make alterations in the proof which cost more than 10 per cent of the cost of composition, exclusive of the cost of correcting printers' errors, he agrees to pay such excess.

<div style="margin-left:2em">

**Author's guarantee as to proprietary rights, libel, etc.**

3A. The Author covenants and represents that he is the sole author and proprietor of the said work, that he has full power to make this agreement and grant, that it in no way infringes upon the copyright or proprietary right of others, and that it contains no libelous or other unlawful matter. The Author agrees to indemnify and hold harmless the said Publishers from all manner of claims, demands, suits or proceedings which may be asserted or instituted on the ground that the said work violates any copyright or proprietary right, or that it contains anything libelous or unlawful; and further agrees to indemnify and hold the Publishers harmless from all charges, liability, costs, expenses or damages of any kind or nature whatsoever arising to the Publishers, or which the

**Defense of copyright**

Publishers may incur or sustain by reason of any of the foregoing. In case of any infringement of the copyright the Publishers may in their discretion sue or employ such remedies as they deem expedient, and all such suits or proceedings shall be at the joint expense of Author and Publishers, and the net proceeds of any recovery shall be divided equally between them, but the Author shall not be liable for any expenditure in excess of $300.00 undertaken by the Publishers without his previous consent in writing.

**Competitive material**

4A. The Author agrees that he will not, without the written permission of the Publishers, publish or permit to be published in book or pamphlet form, while this agreement is in force, any material based on said work, or of such a nature as to impede or reduce its sale.

**Prior publication elsewhere**

5A. If the Author should arrange for publication of said work elsewhere than in the United States (provided Paragraph 1 does not preclude him from doing so), he agrees that it shall not precede publication in the United States without the Publishers' consent in writing; and that, if publication elsewhere has taken or will take place with the Publishers' consent, they shall not be responsible for securing American copyright if it should be impracticable to obtain it without publishing sooner than agreed as above.

**Adjustment of royalties for cheap edition**

6A. If, at the time of publication of a cheap or reprint edition, the Publishers adjust the price of copies of the regular edition remaining unsold in the hands of booksellers, the royalty on such copies shall be adjusted to conform to the terms for the cheap edition as stated above.

**No royalty on free copies**

7A. On copies furnished gratis to the Author, or for review, advertising, sample or like purposes, or on copies destroyed by fire or water, no royalty shall be paid.

**Selections for publicity**

8A. The Publishers may publish, or permit others to publish, without payment, such selections from said work for publicity purposes as they may consider appropriate to benefit its sale.

**Author's copies**

9A. The Publishers shall give to the Author on publication 10 free copies of said work, and he shall have the right to purchase copies for personal use, but not for re-sale, at 60 per cent of the catalog retail price.

**Accounting**

10A. The Publishers agree to render semi-annual statements of account to April 30 and October 31 of each year during August and February following, and to make settlement in cash at the same time. Whenever the semi-annual earnings fall below $10.00 no accounting or payment shall be made until the next settlement date after the earnings have aggregated $10.00, unless requested in writing by the Author. Should the Author receive an overpayment he agrees that the Publishers may deduct such amount from any further earnings of said work or any other books by him which may be published by the Publishers; it being understood that an unearned advance is not an "overpayment."

**Default by the Publishers**

11A. If the Publishers should fail to pay moneys due or to deliver statements as agreed, within three months from the date of written demand by the Author or his representatives, this agreement shall be cancelled and all rights in said work granted herein shall revert to the Author forthwith, and without further notice, and without prejudice to moneys due to him from the Publishers.

**Termination of this agreement**

12A. Should the Publishers fail to keep said work in print and for sale and after written demand from the Author decline or neglect to reprint within three months and to offer it for sale; or in case after two years from the date of first publication they give three months' notice to the Author of their desire and intention to discontinue publication, this agreement shall terminate and all rights granted hereunder shall revert to the Author, together with any existing property originally furnished by him at his expense. In such event the Author shall have the right to purchase the plates, if any, of said work at one-half of the manufacturing cost (including composition) and/or any remaining copies or sheets at one-half of the manufacturing cost of same, exclusive of overhead, in default of which the Publishers shall dispose of the same as they may see fit, without prejudice to moneys due to the Author.

13A.  This agreement supersedes all previous agreements made between The Viking Press, Inc. and John Steinbeck.  The terms herein set forth shall also apply, as from August 12, 1938, to all the previously published books of John Steinbeck, to wit:  CUP OF GOLD, THE PASTURES OF HEAVEN, TO A GOD UNKNOWN, TORTILLA FLAT, IN DUBIOUS BATTLE, OF MICE AND MEN*(novel), OF MICE AND MEN (play).

*See letter 3/6/78 reng. ed.

(see attached rider for 14A, 15A and 16A)

This agreement shall be binding upon the heirs, executors, administrators or assigns of the Author, and upon the successors or assigns of the Publishers, but no assignment shall be binding on either of the parties without the written consent of the other party to this agreement.

**Assignment of this agreement**

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written.

IN THE PRESENCE OF:

_Laurence G. Case_
Witness

_John Steinbeck_
Author and/or Proprietor

_Fanny Strassman_
Witness

THE VIKING PRESS, INC.

By _____
President

</div>



14A. If at any time the Publishers' share of the motion picture and/or dramatic rights received under this agreement shall amount to the sum of $15,000, plus interest thereon at six per cent from August 12, 1938, until the date of the sum being finally earned out, thereafter the Publishers shall cease to have any share in such motion picture and/or dramatic rights.

15A. In case of bankruptcy, receivership, assignment for the benefit of creditors, reorganization under 77B, or liquidation for any cause whatever of the Publishers, all rights granted herein shall revert to the Author.

16A. The Author hereby authorizes his agent, McIntosh & Otis, to collect and receive all sums of money payable to him under the terms of this agreement and declares that the receipt of the said McIntosh & Otis, 18 East 41st Street, New York City, shall be a good and valid discharge in respect thereof, and the said McIntosh & Otis is hereby empowered to act in the Author's behalf in all connections arising out of this agreement.



MEMORANDUM OF AGREEMENT

between

and

THE VIKING PRESS, INC.

for the Publication of

_____

Date _____

THE VIKING PRESS       Memorandum       DATE 10/17/38

FOR _____ FS _____       FROM _____ MAB _____

Add to Steinbeck contract card:

"Agent by phone confirms that rest of world is to
be open market for English and American editions."

# Exhibit B

---

**Penguin USA**

---

AGREEMENT made this 24th day of October 1994, by and between:

Elaine Steinbeck
c/o McIntosh & Otis Inc. (Attention: Eugene Winick)
310 Madison Avenue
New York, New York 10017

the Author and/or Proprietor, party of the first part (the "Author"), and VIKING PENGUIN, A DIVISION OF PENGUIN BOOKS USA INC., 375 Hudson Street, New York, New York 10014, party of the second part (the "Publisher"), respecting:

nineteen books by John Steinbeck:
Work #1   CUP OF GOLD
Work #2   THE PASTURES OF HEAVEN
Work #3   TO A GOD UNKNOWN
Work #4   THE RED PONY
Work #5   TORTILLA FLAT
Work #6   IN DUBIOUS BATTLE
Work #7   OF MICE AND MEN
Work #8   THE LONG VALLEY
Work #9   THE GRAPES OF WRATH
Work #10  THE FORGOTTEN VILLAGE
Work #11  OF MICE AND MEN - (play)
Work #12  THE GRAPES OF WRATH JOURNAL - WORKING DAYS
Work #13  VIVA ZAPATA
Work #14  VIVA ZAPATA - THE LITTLE TIGER  (to be published under
            8/1/91 rider)
Work #15  THE JOURNAL OF A NOVEL
Work #16  THE SEA OF CORTEZ (with Edward F. Ricketts)
Work #17  STEINBECK: A LIFE IN LETTERS (Elaine Steinbeck
            with Robert Wallstein)
Work #18  THE SHORT NOVELS OF JOHN STEINBECK (to the extent of
            TORTILLA FLAT, THE RED PONY, OF MICE AND MEN)
Work #19  THE PORTABLE STEINBECK (to the extent of THE LONG VALLEY,
            THE PASTURES OF HEAVEN, TORTILLA FLAT, IN DUBIOUS
            BATTLE, OF MICE AND MEN, THE RED PONY, THE LONG
            VALLEY, SEA OF CORTEZ)

(each book being separately referred to as the "Work"), whereas Publisher has published the above listed books under existing contracts  and whereas for an additional consideration the parties have agreed to enter into a new agreement for continued publication of the above listed books, it is mutually agreed between the Author and the Publisher with respect to each Work as follows:

Contract For Steinbeck titles    Page 2

PART ONE

*Publication
Rights*

    1. The Author hereby grants and assigns to the Publisher for the remaining term of copyright, and such renewals or extensions thereof as may now or hereafter exist, the sole and exclusive right to publish the Work in volume form in the English language throughout the United States, its territories and dependencies, the Philippines and Canada; such rights shall be non-exclusive in the rest of the world outside the British Commonwealth of Nations (excluding Canada).

The Author also grants to the Publisher such further rights as are specified hereinafter. The phrase "in volume form" shall be defined as meaning publication of the Work as a whole, or substantially complete, as a unit or at one time.

*Delivery of
Manuscript*

    2.  DELETED

*Permissions,
Clearances*

    3.  DELETED

*Proof
Corrections*

    4.  DELETED

*Agreement to
Publish*

    5.  DELETED

*Copyright*

    6. The Publisher shall carry the original copyright registration and the copyright renewal notices in each edition of the Work.

The Author, or the Publisher on the Author's behalf and at its option, shall apply for renewals (if applicable to the Work) whenever they fall due. Both parties agree to execute, at any time, all such papers and documents as may be advisable, in the Publisher's opinion, in order to protect, assign, record, renew, or otherwise effectuate the rights herein, whether granted to the Publisher or reserved by the Author.

*Advance*

    7. The Publisher shall pay to the Author, as a guaranteed advance against and on account of all moneys accruing to him under this agreement, yearly payments in the following amounts, such payments to be made in two equal installments  on or before April 30 and October 31 of each year.  The first payment will be made in October, 1994 or on signing of this agreement, whichever is later.

Year number 1  $435,500.
Year number 2  $435,500.
Year number 3  $385,250.
Year number 4  $385,250.

Year number 5 $385,250.
Year number 6 $535,000.
Year number 7 and thereafter* $335,000.

*Beginning in the seventh year and each year thereafter, it is understood and agreed that the $335,000. payment will be adjusted annually by the Publisher based on an increase in the National Consumer Price Index (the US city average for all urban consumers) or its successor equivalent, with a cap of 10 percent on any such annual adjustment.

The guaranteed advance shall also be adjusted annually so that if, in any year, the earnings payable to the Author exceed the guaranteed advance for that year ("excess earnings"), the amount of the guaranteed advance for the following year only shall be restated by adding a sum equal to the excess earnings from the preceding year to the guaranteed advance. The annual guaranteed advance shall not be adjusted downward for any shortfall by operation of this paragraph.

The above payments taken together with payments due Author under separate agreements with Elaine Steinbeck and Thomas Steinbeck dated October 24, 1994 for other Steinbeck works provide for a guaranteed advance payment of $650,000. in years 1 and 2, $575,000. for years 3, 4 & 5, and $500,000. in year 6 and thereafter.

If at any time the Publisher determines that payment of the annual guarantee is not economically feasible for Publisher to continue, the Publisher and Author agree to negotiate in good faith as to a reduced annual guarantee. If no agreement can be reached this agreement will terminate upon Publisher's written notice to the Author subject to Publisher's right to sell off existing inventory of the Work for a period of 18 months from the date of such termination.

*Royalties:*
*Regular Sales*

8. Except as set forth in Clause 20, the Publisher agrees to pay the Author a royalty on the invoiced retail price of every copy sold by the Publisher, less copies returned (except as set forth below):

HARDCOVER EDITION

15 percent

TRADE PAPERBOUND EDITION

10 percent for the following titles -
THE GRAPES OF WRATH
OF MICE AND MEN
     (whether sold separately or in 2-in-1 volume
     with CANNERY ROW; although CANNERY ROW is covered
     by a separate agreement, a single royalty shall apply to
     the invoiced retail price of the 2-in-1 volume)
THE RED PONY
     (whether sold separately or in 2-in-1
     volume with THE PEARL; although THE PEARL is
     covered by a separate agreement, a single
     royalty shall apply to the invoiced retail price of
     the 2-in-1 volume)

Contract For Steinbeck titles      age 4

8 percent for the following titles -
TO A GOD UNKNOWN
TORTILLA FLAT
IN DUBIOUS BATTLE
THE LONG VALLEY

7 percent for the following titles -
CUP OF GOLD
THE PASTURES OF HEAVEN
THE FORGOTTEN VILLAGE
OF MICE AND MEN (play)
THE GRAPES OF WRATH JOURNAL - WORKING DAYS
VIVA ZAPATA
VIVA ZAPATA - THE LITTLE TIGER
THE JOURNAL OF A NOVEL
THE SEA OF CORTEZ
STEINBECK: A LIFE IN LETTERS
THE SHORT NOVELS OF JOHN STEINBECK
THE PORTABLE STEINBECK

## MASS MARKET PAPERBOUND EDITION

15 percent for the following titles -
THE GRAPES OF WRATH
OF MICE & MEN
    (whether sold separately or in 2-in-1
    volume with CANNERY ROW; although CANNERY ROW is covered
    a separate agreement, a single royalty shall apply to the
    invoiced retail price of the 2-in-1 volume)
THE RED PONY
    (whether sold separately or in 2-in-1
    volume with THE PEARL; although THE PEARL is covered
    by a separate agreement, a single royalty shall
    apply to the invoiced retail price of the 2-in-1 volume)

10 percent for the following titles -
TO A GOD UNKNOWN
TORTILLA FLAT
IN DUBIOUS BATTLE
THE LONG VALLEY

8 percent for the following titles -
CUP OF GOLD
THE PASTURES OF HEAVEN
THE FORGOTTEN VILLAGE
OF MICE AND MEN (play)
THE GRAPES OF WRATH JOURNAL - WORKING DAYS
VIVA ZAPATA
VIVA ZAPATA - THE LITTLE TIGER
THE JOURNAL OF A NOVEL
THE SEA OF CORTEZ
STEINBECK:  A LIFE IN LETTERS
THE SHORT NOVELS OF JOHN STEINBECK
THE PORTABLE JOHN STEINBECK

Copies covered by any of the following subdivisions of this Clause 8 shall not
be included in such computation.

Contract For <u>Steinbeck titles</u>   Page 5

*Sales of Sheets*

          (a) On sales of sheets to prebinders: a royalty of ten percent of the net amount that the Publisher receives;

*Mail order*
*Premium*

          (b) On copies sold direct to the consumer through the medium of mail-order coupon advertising or direct-by-mail circularization and on premium sales: a royalty of five percent (5%) of the net amount that the Publisher receives;

*Export/Canadian*
*Sales*

          (c) On copies sold in Canada, or for export, whether in bound copies or in sheets, a royalty of ten percent (10%) of the net amount Publisher receives.

*Sales at*
*High Discounts*

          (d) On copies sold at discounts of more than fifty percent (50%) of the invoiced retail price for hardcover and trade paperback editions and at discounts of more than sixty percent (60%) of the invoiced retail price for mass market paperback editions, a royalty of ten percent (10%) of the net amount that the Publisher receives;

Notwithstanding the foregoing, should the Publisher's retail and whole-sale trade discount policies ever exceed fifty percent (50%) of the invoiced retail price for hardcover and trade paperback editions and sixty percent (60%) of the invoiced retail price for mass market paperback editions, the full regular royalty rate would apply on all domestic sales governed by such policies.

*Cheap Hardcover*
*Edition*

          (e) On copies sold of any cheap hardcover edition which Publisher publishes at a price not more than two-thirds of the suggested retail price, a royalty of ten percent of the net amount Publisher receives. If the Work is published in a single combined ("omnibus") edition with other works by the Author, Publisher shall pay Author a pro-rata share of the applicable royalties as set forth in this paragraph based on the proportion the Work comprises of such omnibus edition.

*Sales from Later*
*Small Editions*

          (f) On copies sold from a reprinting of three thousand (3,000) or fewer hardcover copies or trade paperback copies or five thousand (5,000) or fewer mass market paperbound copies made two years or more after first publication of the Work, it being understood that such reprintings will not be made more than once a year: one-half of the prevailing royalty rate then in effect; this reduced royalty is provided because of the increased cost of manufacture of small reprintings, to enable the Author and the Publisher to keep the Work in print and in circulation as long as possible; and may be terminated upon six (6) months notice from Author.

*Nonroyalty*

(g) On copies furnished gratis to the Author, or for review, advertising, sample, or like purposes, or on copies destroyed by fire or water or other means, or on copies sold at or below cost, no royalty shall be paid.

*Author's Copies*

9. The Author shall have the right to purchase copies for personal use, but not for resale, at forty percent (40%) discount. Such purchases shall be paid for within thirty (30) days of the date of the Publisher's invoice.

Should the Publisher decide to remainder the balance of its inventory of the Work, it shall first offer copies to the Author at the manufacturing cost of the last printing, and the Author shall have two weeks to respond to this offer.

*Audio-Visual*

10. The Publisher shall have the right in the English language (to be exclusive or nonexclusive as specified in the grant of territory in Clause 1), to produce, manufacture, sell, distribute, exhibit, and transmit derivative versions of the Work in any audio form provided it is a single voice, non-dramatic reading of the text and/or visual form provided it is a non-dramatic, non-illustrative, non-animated display of the text only, including, without limitation, film strips, phonograph records, tapes, telecartridges, computer software, and other information and storage retrieval systems:

a royalty to be mutually agreed in good faith between Publisher and Author | referencing to standard industry rates;

EXCEPT with respect to the audio versions of, OF MICE AND MEN, the royalty with respect to each such audio version shall be 8 percent of Publisher's net receipts for the first 10,000 units sold and 10 percent of Publisher's net receipts for all copies sold in excess of 10,000 units.

Publisher acknowledges that specifically excluded from the audiorecording rights granted herein is the right to distribute the audiorecordings in the mail-order rental market, such rights having already been granted by Author to Books on Tape, but shall not be otherwise restricted except that both the Publisher and Books on Tape shall have the nonexclusive rights to distribute the audio recordings in the library and specialty rental markets.

Publisher's exercise of these rights will in no way conflict with Author's exercise of television/motion picture rights.

Elaine Steinbeck shall have prior approval of the script and the artwork and packaging of any audio visual versions of the Work.

*Subsidiary Rights*

11. The Publisher shall also have the following rights in the English language (to be exclusive or nonexclusive as specified in the territorial grant in Clause 1), with respect to which the Publisher alone may make arrangements with third parties on the Publisher's own behalf, or on behalf of the Author when necessary, and the division of the Publisher's net receipts from the sale or other disposition of these rights shall be as follows:

All subsidiary rights licenses, with the exception of excerpts or digests in
anthologies or other volumes pursuant to Clause 11 (d), shall be subject to the
Author's approval, such approval not to be unreasonably withheld. Failure of
Author/Agent to reply with any objections within ten business days of
Publisher's inquiry shall be deemed as Author approval. See 11 (a) with respect
to licensing of paperback rights.

*Reprint*

(a) Paperbound* hardcover, or large-type reprint publication: fifty percent
(50%) of said receipts to the Author and fifty percent (50%) to the
Publisher;

* Paperbound licenses to a third party shall be subject to the approval
of the Author, or his agent acting on Author's behalf, such approval
not to be unreasonably withheld, except (i) withholding of approval
cannot be used to veto one Penguin USA paperback imprint from acquiring
rights in a competitive situation where such imprint is acting as a
third party and (b) in the event there is a proposed licensing to a
third party which is disapproved by the Author, or his agent acting on
Author's behalf, thereby putting the Work out of print and rights
subsequently revert to the Author pursuant to the provisions of Clause
8A, the Author and/or his agent cannot license paperback rights to that
party within twelve months of Author's, or his agent acting on Author's
behalf, disapproval of Publisher's proposed license.

*Book Club*

(b) Book-club publication: fifty percent (50%) of said receipts to the
Author and fifty percent (50%) to the Publisher;

*First Serial*

(c) DELETED

*Second Serial,*
*Anthology, etc.*

(d) Periodical publication, including without limitation  magazine, news-
paper, and digest after book publication, reprinting in whole or in
part or excerpts or digests (but not abridgments which are prohibited)
in anthologies or other volumes, pamphlets, etc., and public readings:
fifty percent (50%) of said receipts to the Author and fifty percent
(50%) to the Publisher;

*Audio-Visual*

(e) Reproduction of the text  or any adaptation of the work, or any
derivative versions thereof, in any audio form provided it is a single
voice, non-dramatic reading of the text and/or visual form provided it
is a non-dramatic, non-illustrative, non-animated display of the text
only (other than by motion picture, radio or television, or in storage
and retrieval systems), including without limitation film strips, pho-
nograph records, telecartridges and tapes: seventy five percent (75%)
of said receipts to the Author and twenty five percent (25%) to the
Publisher;  No performance rights are granted in connection with such
rights.

Publisher acknowledges that specifically excluded from the
audiorecording rights granted herein is the right to distribute the
audiorecordings in the mail-order rental market, such rights having
already been granted by Author to Books on Tape, but shall not be

otherwise restricted except that both the Publisher and Books on Tape shall have the nonexclusive right to distribute the audio recordings in the library and speciality rental markets.

Elaine Steinbeck shall have prior approval of the script and artwork and packaging of any audio visual version of the Work.

*Radio and*
*Television*

(f)  DELETED

*Motion Picture*
*and Dramatic*

(g)  DELETED

In the event of the disposition of performance rights, the Publisher agrees to grant to the purchaser the privilege to publish excerpts and summaries of the Work or of any motion picture, dramatic, or television version of the Work, in the aggregate not to exceed ten percent (10%) of the text (but not more than 7,500 words), for advertising and exploiting such rights, provided that all steps necessary to protect the copyright of the Work are taken and that the Publisher is credited as the publisher of the Work.

*Data Storage*
*and Retrieval*

(h)  Use of the text only in non-dramatic, non-illustrative, non-animated display through computer software and in other information storage and retrieval systems, whether through computer, mechanical, or other electronic means now known or hereafter invented and ephemeral screen-flashing or reproduction thereof, whether by printout, photo-reproduction or photocopy, including without limitation punch cards, microfilm, magnetic tapes, or like processes attaining similar results: seventy five percent (75%) of receipts to the Author and twenty five percent (25%) to the Publisher;

Elaine Steinbeck shall have prior approval of the script and artwork and packaging of any versions of the Work for data storage and retrieval.

*Commercial Use*

(i)  DELETED

*by the*
*Handicapped*

(j)  Publication or transcription  of the Work in whole or in part without charge in braille, tapes, or other forms for use by the physically handicapped: none.

*Editions in*
*English Abroad*

12.  DELETED

*Translation*

13.  DELETED

*Rights Reserved*
*by Author*

14. All rights not specifically granted to the Publisher under this agreement are reserved by the Author.

*Publicity*

15. DELETED

*Space*
*Advertising*

16. Commercial advertisements (other than a list of other works published by the Publisher or its licensees) may not be inserted or printed in any edition of the Work without the Author's prior written consent.

*Accounting and*
*Payment*

17. The Publisher agrees to render semiannual statements of accounts on a work-by-work basis on the hardcover edition to April 30 and October 31 of each year, on or before August 31 and February 28 following, and statements of account on the paperbound edition published by the Publisher shall be rendered to June 30 and December 31 of each year, on or before October 31 and April 30 following, and the Publisher agrees to accompany such statements with checks in payment of the amounts due thereon. In making accountings, Publisher shall have the right to allow for a reasonable reserve against returns to be defined as a reserve sufficient in light of the actual return percentage in the sale of the Work and to be adjusted accordingly in each accounting period. After two years following the publication date regular royalty statements and payments need not be issued by the Publisher until accumulated earnings from all sources, due and payable, exceed $10.00, unless requested in writing by the Author. Should the Author receive an overpayment, the Author agrees that the Publisher may deduct such amount from any further earnings of the Work, it being understood that an unearned advance is not an "overpayment."

Works #1 - #19 will be jointly accounted and no sums, other than the yearly guarantees due pursuant to Clause 7, will be paid to the Author until the total amount (cumulative from the first payment) paid in guarantees to the Author has been earned from all sums accruing to the Author hereunder on Works #1 - #19 at the end of each royalty period.

The Author may, upon written request, examine or cause to be examined through certified public accountants the Publisher's books of account insofar as they relate to the sale or licensing of the Work, provided such examinations are limited to one per year and take place during regular business hours. Such examination shall be at the Author's expense, unless errors of accounting amounting to more than five percent (5%) of the total sums accrued to the Author shall be found to the Author's disadvantage, in which case the reasonable cost of the examination shall be borne by the Publisher, and payment of the amount due shall be made within thirty (30) days thereafter.

*Option on Other*
*Work*

18. DELETED

*Termination of
Previous Agreements*

19.  This agreement, when signed by Author and Publisher, will cancel and supercede the previous agreements, as amended, for the Works #1 - #19 covered hereunder.

20.  Inasmuch as this Agreement does not include all the contents of Work #18 and Work #19, fifty percent of the royalty specified for Work #18 THE SHORT NOVELS OF JOHN STEINBECK, and seventy five percent of the royalty specified for Work #19, THE PORTABLE STEINBECK, will be  due the Author hereunder.

PART TWO

Author's
Guarantee

1A. The Author represents and warrants that John Steinbeck is the sole author of the Work; that the Author is the sole owner of all rights granted hereunder; that the Author has not sold, licensed, assigned, or otherwise encumbered, and will not sell, license, assign, or otherwise encumber, any of such rights; that the Author has full power to enter into and to perform this agreement; that, except for any material expressly permitted or cleared pursuant to Clause 3 of Part One, the Work is original, and is not in the public domain; that the Work in no way violates any copyright or proprietary or contract or personal right of others, and that it contains nothing unlawful, libelous, or obscene. In the event of any claim, action, or proceeding based upon an alleged violation of any of these warranties, (a) the Publisher shall have the right to defend the same through counsel of its own choosing; (b) the Author shall hold harmless the Publisher, any seller of the Work, any licensee of a subsidiary right in the Work, and any other person to whom the Publisher or its licensees may extend the representations and warranties contained herein in connection with the production or distribution of the Work or the exercise of any rights therein or derived therefrom, against any damages and expenses (including reasonable legal fees and expenses) arising from the breach or alleged breach of any of the foregoing warranties. If any such claim, action, or proceeding is instituted, the Publisher shall promptly notify the Author, who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due the Author under this agreement between the parties. These warranties and indemnities shall survive the termination of this agreement.

Publisher agrees to designate Author as to the Work as an additional insured in any Errors and Omissions insurance policy which Publisher may purchase at its expense covering its book publishing activity and shall, except as limited hereinbelow, look solely to the proceeds of such insurance coverage for payment of any sums that may become due from Author by reason of the indemnification undertaken by the Author hereinabove regarding risks which are covered by Publisher's Errors and Omissions insurance policy except if the Author's breach of warranties set forth hereinabove is done wilfully. Author's obligation to indemnify Publisher shall be limited to thirty-seven thousand, five hundred dollars ($37,500) which sum is less than one-half (1/2) of the one hundred thousand dollar ($100,000) deductible presently in effect on the Errors and Omissions insurance policy. Notwithstanding the foregoing, Author acknowledges that the limits of liability may effectively be decreased or exhausted as a result of occurrences during a year related to other works and other additional insureds and that Author's liability to Publisher in excess of such coverage is not affected hereby. In consideration for the foregoing, Author agrees that they will fully cooperate with Publisher in the defense of any such claims, the Publisher and/or its insurer shall have the right to select counsel, and that Publisher shall have the right to settle any claim upon the terms and conditions it and/or its insurer deems satisfactory.

*Defense of
Copyright*

2A. In case of any infringement of the copyright of the Work by others, the Publisher may in its discretion sue or employ such remedies as it deems expedient, and all such suits or proceedings shall be at the joint expense of Author and Publisher, and the net proceeds of any recovery shall be divided equally between them, but the Author shall not be liable for any expenditure for such purposes in excess of one thousand dollars ($1,000.00) undertaken by the Publisher without the Author's previous consent in writing. If the Author does not consent to all expenditures for such purposes, any recovery shall be divided between the Publisher and the Author in the ratio of their respective expenditures for such purposes.

*Competitive
Material*

3A. DELETED

*Prior
Publication*

4A. DELETED

*Default by the
Publisher*

5A. If the Publisher should fail to pay undisputed monies due or to deliver statements as agreed (unless such failure is due to a good-faith dispute between the Author and the Publisher) within 60 days from the date of written demand by the Author or his/her representatives, this agreement shall be canceled and all rights in the Work granted herein shall revert to the Author forthwith and without further notice, and without prejudice to monies due to the Author from the Publisher.

*Author's
Property*

6A. DELETED

*Revised Edition*

7A. DELETED

*Termination of
s Agreement*

8A. Should the Publisher fail to keep in print any one of Works #1 through #19 or any of the other Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck and Thomas Steinbeck dated October 24, 1994 and after written demand from the Author decline or neglect to bring such Work back into print within one year, the Publisher's rights shall terminate hereunder as well as terminate for the other Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck and Thomas Steinbeck dated October 24, 1994, provided that all obligations of the Author to the Publisher have been met.  Upon the effective date of termination, the Publisher shall have the right to dispose of any copies remaining on hand of the in print Works and any copies in process of the Works covered hereunder as well as any other in print or in process Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck and Thomas Steinbeck dated October 24, 1994 subject to the

Contract For Steinbeck Titles                                        Page 13

payment of royalties as provided hereunder and as provided in the agreement with
Elaine Steinbeck and Thomas Steinbeck dated October 24, 1994. It is understood
that any Work shall be considered to be in print if any hardcover or softcover
publication rights granted hereunder are being exercised or are under contract
to be exercised.

If, any time after first publication, the Publisher wishes to discontinue
publication for any reason of any Work which is the subject of this agreement or
a separate agreement with Elaine Steinbeck and Thomas Steinbeck dated October
24, 1994, the Publisher may do so upon written notice to the Author, in which
event this agreement and the other agreements for the Steinbeck works dated
October 24, 1994 with Elaine Steinbeck and Thomas Steinbeck shall terminate and
all rights granted hereunder shall revert to the Author upon the termination
date set forth in such notice from the Publisher. If such termination occurs,
the provisions of the immediately following paragraph of this Clause 8A shall
apply.

For thirty (30) days after the date of such termination, the Author shall have
the right, but not the obligation, to acquire from the Publisher (a) any print-
er's materials under the control of the Publisher, at the fair market value
thereof; and/or (b) any inventory of the work under the control of the Publish-
er, at the manufacturing cost of last printing. If the Author does not exercise
such right within such thirty (30) days, the Publisher may dispose of any such
materials or inventory without any further obligation to the Author.

*Termination*
*Under U.S. Law*

9A. If Elaine Steinbeck exercises her right to terminate grants made to
Publisher in this agreement (in accordance with Section 304(c) of Title 17 of
the U.S. Code) and if the Terminating party(ies) fail(s) to enter into an
agreement with Publisher for Publisher to continue to publish the terminated
work(s), then Publisher may take the following actions:

1. The amount by which the Guaranteed Advance Payments exceed royalties due
and/or paid to all Authors from the date of this contract until the date a
Notice of Termination is received by Publisher ("Excess Guaranteed Payments")
shall be calculated on a work-by-work basis (pro-rated in proportion to the
royalties generated by each work during the period). The amount of the Excess
Guaranteed Payment attributable to the terminated work (even if received by
other than the terminating party) shall be, at Publisher's option, recoverable
by Publisher from any royalties and/or further Guaranteed Advance Payments owed
to the terminating party or parties (as pro-rated) from that date forward, on
account of the terminating party(ies)'s interest in the terminated work (if any)
during the period between notice of termination and recapture and/or on account
of the terminating party(ies)'s pro-rata interest in any non-terminated works
that are the subject of this agreement.

2. In addition to the right to recapture the excess over earnings on Guaranteed
Advances as provided above, in the event the terminating party(ies) wish to
transfer the recaptured rights to a third party, they shall first offer them to
Publisher in the following manner:

(i) If terminating party(ies) decide(s) to accept a bona fide offer with
respect to all or part of the terminated work(s) then in each such instance
terminating party(ies) shall, promptly after deciding to accept such offer, give
Publisher written notice specifying such terms and conditions which terminating
party(ies) is(are) prepared to accept and the name(s) of the third party who
made the offer to terminating party(ies). At any time within fifteen (15) days

after receipt of such written notice from terminating party(ies), Publisher may notify terminating party(ies) in writing of its acceptance of such offer and, in such event, the rights referred to in such offer shall be assigned to Publisher, subject to Publisher's compliance with the terms of the offer so accepted. If Publisher shall acquire from terminating party(ies) all or part of the terminated work(s), then both parties agree to enter into a written agreement with respect thereto.

(ii)   If Publisher shall elect not to purchase the terminated work(s), the terminating party(ies) may dispose of said terminated work(s) but only to the offerer and upon the terms and conditions specified in such notice, it being understood and agreed that terminating party(ies) may not dispose of such rights to any other party or upon terms and conditions any different from those offered to Publisher hereunder without again offering such terminated work(s) to Publisher as herein provided.

**Bankruptcy and Liquidation**

10A. In the event that the Publisher shall be adjudicated a bankrupt, a receiver or a trustee shall be appointed for all or substantially all of the Publisher's property, and the order appointing the receiver or trustee shall not have been vacated within sixty (60) days from its entry, or if the Publisher shall seek to take advantage of any so-called insolvency law, all rights hereby granted to the Publisher shall forthwith revert to the Author, and this agreement shall thereupon terminate.

**Governing Law**

11A. This agreement shall be interpreted under the laws of the State of New York applicable to contracts entirely made and performed therein. Any dispute between the Author and the Publisher relating to this agreement and/or the Work, if it cannot be settled by mutual agreement between the Author and the Publisher, shall be submitted solely to the Federal or State courts sitting in New York City, or courts with appellate jurisdiction therefrom, and the Author and the Publisher both consent to the jurisdiction and venue of such courts for such purpose.

**Complete Agreement**

12A. This agreement constitutes the complete understanding of the parties, and no waivers or modifications of any provision shall be valid unless in writing, signed by the Author and the Publisher. The waiver of a breach or of a default under any provision hereof shall not be deemed a waiver of any subsequent breach or default. The payment of any advances or royalties hereunder shall not be deemed a waiver by the Publisher of any rights and/or claims that it may have with respect to nonperformance by the Author of the Author's obligations hereunder.

Contract For Steinbeck titles        Page 15

*Assignment*

    13A. This agreement shall be binding upon the heirs, executors, or administrators of the Author, and upon the successors and assigns of the Publisher. The Author shall not assign this agreement, or obligations hereunder, without the prior written consent of the Publisher. The Publisher shall have the right on notice to Author to assign this agreement, or its rights and obligations hereunder, only to a company acquiring all or substantially all of the Publisher's assets. The Author shall have the right to assign any amounts due hereunder to the extent such amounts become due after the Publisher has received written notice from the Author of such assignment.

*Agency*
*Clause*

    14A. All sums of money due under this agreement shall be paid to the Author's agent, McIntosh & Otis, Inc., 310 Madison Avenue, New York, New York 10017 and the receipt of the said McIntosh & Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh & Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement.

The Author does hereby irrevocably assign and transfer to McIntosh & Otis, Inc. and McIntosh & Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written.

IN THE PRESENCE OF:                                    ELAINE STEINBECK

_____                        _____
                                    Witness

                                    VIKING PENGUIN

_____
                                    Witness        Barbara Grossman
                                                    Senior Vice President        ALAN J. KAUFMAN
                                                    Publisher, Viking        Senior Vice President & General Counsel

# Exhibit C

## Penguin USA

AGREEMENT made this 24th day of October 1994, by and between:

Elaine Steinbeck and Thomas Steinbeck
c/o McIntosh & Otis Inc. (Attention: Eugene Winick)
310 Madison Avenue
New York, New York 10017

jointly and severally referred to as the Author and/or Proprietor, party of the first part (the "Author"), and VIKING PENGUIN, A DIVISION OF PENGUIN BOOKS USA INC., 375 Hudson Street, New York, New York 10014, party of the second part (the "Publisher"), respecting:

eighteen books by John Steinbeck:
Work #1   THE MOON IS DOWN
Work #2   THE MOON IS DOWN (play)
Work #3   BOMBS AWAY
Work #4   CANNERY ROW
Work #5   THE PEARL
Work #6   THE WAYWARD BUS
Work #7   A RUSSIAN JOURNAL
Work #8   BURNING BRIGHT
Work #9   EAST OF EDEN
Work #10  SWEET THURSDAY
Work #11  THE SHORT REIGN OF PIPPIN IV
Work #12  ONCE THERE WAS A WAR
Work #13  THE WINTER OF OUR DISCONTENT
Work #14  TRAVELS WITH CHARLEY
Work #15  AMERICA AND AMERICANS
Work #16  LOG FROM THE SEA OF CORTEZ (with Edward F. Ricketts)
Work #17  THE SHORT NOVELS OF JOHN STEINBECK (to the extent of
          THE MOON IS DOWN, CANNERY ROW, THE PEARL)
Work #18  THE PORTABLE STEINBECK (to the extent of "About Ed
          Ricketts", CANNERY ROW, EAST OF EDEN, TRAVELS
          WITH CHARLEY, IN SEARCH OF AMERICA, Two Uncollected
          Stories, The Language of Awareness)

(each book being separately referred to as the "Work"), whereas Publisher has published the above listed books under existing contracts and whereas for an additional consideration the parties have agreed to enter into a new agreement for continued publication of the above listed books, it is mutually agreed between the Author and the Publisher with respect to each Work as follows:

Contract For Steinbeck ti...    Page 2

## PART ONE

Pu...tion
Rights

1. The Author hereby grants and assigns to the Publisher for the remaining term of copyright, and such renewals or extensions thereof as may now or hereafter exist, the sole and exclusive right to publish the Work in volume form in the English language throughout the United States, its territories and dependencies, the Philippines and Canada; such rights shall be non-exclusive in the rest of the world outside the British Commonwealth of Nations (excluding Canada).

The Author also grants to the Publisher such further rights as are specified hereinafter. The phrase "in volume form" shall be defined as meaning publication of the Work as a whole, or substantially complete, as a unit or at one time.

Delivery of
Manuscript

2.  DELETED

Permissions,
Cle...nces

3.  DELETED

Proof
Corrections

4.  DELETED

Agreement to
Publish

5.  DELETED

Copyright

6. The Publisher shall carry the original copyright registration and the copyright renewal notices in each edition of the Work.

The Author, or the Publisher on the Author's behalf and at its option, shall apply for renewals (if applicable to the Work) whenever they fall due. Both parties agree to execute, at any time, all such papers and documents as may be advisable, in the Publisher's opinion, in order to protect, assign, record, renew, or otherwise effectuate the rights herein, whether granted to the Publisher or reserved by the Author.

Advance

7. The Publisher shall pay to the Author, as a guaranteed advance against and on account of all moneys accruing to him under this agreement, yearly payments in the following amounts, such payments to be made in two equal installments  on or before April 30 and October 31 of each year.  The first payment will be made in October, 1994 or on signing of this agreement, whichever is later.

Year number 1  $214,500.
Year number 2  $214,500.
Year number 3  $189,750.
Year number 4  $189,750.
Year number 5  $189,750.

Year number 6  $165,000.
Year number 7 and thereafter*  $165,000.

*Beginning in the seventh year and each year thereafter, it is understood and agreed that the $165,000. payment will be adjusted annually by the Publisher based on an increase in the National Consumer Price Index (the US city average for all urban consumers) or its successor equivalent, with a cap of 10 percent on any such annual adjustment.

The guaranteed advance shall also be adjusted annually so that if, in any year, the earnings payable to the Author exceed the guaranteed advance for that year ("excess earnings"), the amount of the guaranteed advance for the following year only shall be restated by adding a sum equal to the excess earnings from the preceding year to the guaranteed advance.  The annual guaranteed advance shall not be adjusted downward for any shortfall by operation of this paragraph.

If at any time the Publisher determines that payment of the annual guarantee is not economically feasible for Publisher to continue, the Publisher and Author agree to negotiate in good faith as to a reduced annual guarantee.  If no agreement can be reached this agreement will terminate upon Publisher's written notice to the Author subject to Publisher's right to sell off existing inventory of the Work for a period of 18 months from the date of such termination.

All royalty payments due on account of copyright renewals signed by John Steinbeck IV are included in and shall be apportioned from this payment.

*Royalties:*
*Regular Sales*

8. Except as set forth in Clause 20, the Publisher  agrees  to pay the Author  a  royalty  on  the  invoiced  retail price  of every copy sold by the Publisher, less copies returned (except as set forth below):

HARDCOVER EDITION

15 percent

TRADE PAPERBOUND EDITION

10 percent for the following titles -
CANNERY ROW
(whether sold separately on in 2-in-1
volume with OF MICE AND MEN; although OF MICE
AND MEN is covered by a separate agreement,
a single royalty shall apply to the
invoiced retail price of the 2-in-1 volume)
THE PEARL
(whether sold separately or in 2-in-1
volume with THE RED PONY; although THE RED PONY is
covered by a separate agreement, a single
royalty shall apply to the invoiced retail
price of the 2-in-1 volume)
EAST OF EDEN

8 percent for the following titles -
SWEET THURSDAY
TRAVELS WITH CHARLEY
THE WINTER OF OUR DISCONTENT
THE MOON IS DOWN

Contract For Steinbeck ti...  Page 4

        THE WAYWARD BUS
        LOG FROM THE SEA OF CORTEZ

        7 percent for the following titles -
        BURNING BRIGHT
        THE SHORT REIGN OF PIPPIN IV
        ONCE THERE WAS A WAR
        THE MOON IS DOWN (Play)
        RUSSIAN JOURNAL
        BOMBS AWAY
        AMERICA AND AMERICANS
        THE SHORT NOVELS OF JOHN STEINBECK
        THE PORTABLE STEINBECK

## MASS MARKET PAPERBOUND EDITION

        15 percent for the following titles -
        CANNERY ROW
            (whether sold separately or in 2-in-1
            volume with OF MICE AND MEN; although OF MICE
            AND MEN is covered by a separate agreement, a
            single royalty shall apply to the invoiced
            retail price of the 2-in-1 volume)
        THE PEARL
            (whether sold separately or in 2-in-1
            volume with THE RED PONY; although THE RED PONY
            is covered by a separate agreement, a single
            royalty shall apply to the invoiced retail price
            of the 2-in-1 volume)
        EAST OF EDEN

        10 percent for the following titles -
        SWEET THURSDAY
        TRAVELS WITH CHARLEY
        THE WINTER OF DISCONTENT
        THE MOON IS DOWN
        THE WAYWARD BUS
        LOG FROM THE SEA OF CORTEZ

        8 percent for the following titles -
        BURNING BRIGHT
        THE SHORT REIGN OF PIPPIN IV
        ONCE THERE WAS A WAR
        THE MOON IS DOWN (Play)
        RUSSIAN JOURNAL
        BOMBS AWAY
        AMERICA AND AMERICANS
        THE SHORT NOVELS OF JOHN STEINBECK
        THE PORTABLE STEINBECK

Copies covered by any of the following subdivisions of this Clause 8 shall not be included in such computation.

*Sales of Sheets*

        (a) On sales of sheets to prebinders: a royalty of ten percent of the net amount that the Publisher receives;

Contract For Steinbeck tit'      Page 5

*Mail order*
*Premium*

(b) On copies sold direct to the consumer through the medium of mail-order coupon advertising or direct-by-mail circularization and on premium sales: a royalty of five percent (5%) of the net amount that the Publisher receives;

*Export/Canadian*
*Sales*

(c) On copies sold in Canada, or for export, whether in bound copies or in sheets, a royalty of ten percent (10%) of the net amount Publisher receives.

*Sales at*
*High Discounts*

(d) On copies sold at discounts of more than fifty percent (50%) of the invoiced retail price for hardcover and trade paperback editions and at discounts of more than sixty percent (60%) of the invoiced retail price for mass market paperback editions, a royalty of ten percent (10%) of the net amount that the Publisher receives;

Notwithstanding the foregoing, should the Publisher's retail and whole-sale trade discount policies ever exceed fifty percent (50%) of the invoiced retail price for hardcover and trade paperback editions and sixty percent (60%) of the invoiced retail price for mass market paperback editions, the full regular royalty rate would apply on all domestic sales governed by such policies.

*Cheap Hardcover*
*Edition*

(e) On copies sold of any cheap hardcover edition which Publisher publishes at a price not more than two-thirds of the suggested retail price, a royalty of ten percent of the net amount Publisher receives. If the Work is published in a single combined ("omnibus") edition with other works by the Author, Publisher shall pay Author a pro-rata share of the applicable royalties as set forth in this paragraph based on the proportion the Work comprises of such omnibus edition.

*Sales from Later*
*Small Editions*

(f) On copies sold from a reprinting of three thousand (3,000) or fewer hardcover copies or trade paperback copies or five thousand (5,000) or fewer mass market paperbound copies made two years or more after first publication of the Work, it being understood that such reprintings will not be made more than once a year: one-half of the prevailing royalty rate then in effect; this reduced royalty is provided because of the increased cost of manufacture of small reprintings, to enable the Author and the Publisher to keep the Work in print and in circulation as long as possible; and may be terminated upon six (6) months notice from Author.

*Nonroyalty*

(g) On copies furnished gratis to the Author, or for review, advertising, sample, or like purposes, or on copies destroyed by fire or water or other means, or on copies sold at or below cost, no royalty shall be paid.

Contract For Steinbeck ti!         Page 6

*Author's Copies*

9. The Author shall have the right to purchase copies for personal use, but not for resale, at forty percent (40%) discount. Such purchases shall be paid for within thirty (30) days of the date of the Publisher's invoice.

Should the Publisher decide to remainder the balance of its inventory of the Work, it shall first offer copies to the Author at the manufacturing cost of the last printing, and the Author shall have two weeks to respond to this offer.

*Audio-Visual*

10. The Publisher shall have the right in the English language (to be exclusive or nonexclusive as specified in the grant of territory in Clause 1), to produce, manufacture, sell, distribute, exhibit, and transmit derivative versions of the Work in any audio form provided it is a single voice, non-dramatic reading of the text and/or visual form provided it is a non-dramatic, non-illustrative, non-animated display of the text only, including, without limitation, film strips, phonograph records, tapes, telecartridges, computer software, and other information and storage retrieval systems:

a royalty to be mutually agreed in good faith between Publisher and Author referencing to standard industry rates;

EXCEPT with respect to the audio versions of TRAVELS WITH CHARLEY and THE PEARL the royalty with respect to each such audio version shall be 8 percent of Publisher's net receipts for the first 10,000 units sold and 10 percent of Publisher's net receipts for all copies sold in excess of 10,000 units.

Publisher acknowledges that specifically excluded from the audiorecording rights granted herein is the right to distribute the audiorecordings in the mail-order rental market, such rights having already been granted by Author to Books on Tape and with respect to CANNERY ROW and SWEET THURSDAY to Recorded Books, but shall not be otherwise restricted except that both the Publisher and Books on Tape and Recorded Books shall have the nonexclusive right to distribute the audio recordings in the library and specialty markets.

Publisher's exercise of these rights will in no way conflict with Author's exercise of television/motion picture rights.

Elaine Steinbeck shall have prior approval of the script and the artwork and packaging of any audio visual versions of the Work.

*S       liary Rights*

11. The Publisher shall also have the following rights in the English language (to be exclusive or nonexclusive as specified in the territorial grant in Clause 1), with respect to which the Publisher alone may make arrangements with third parties on the Publisher's own behalf, or on behalf of the Author when necessary, and the division of the Publisher's net receipts from the sale or other disposition of these rights shall be as follows:

All subsidiary rights licenses, with the exception of excerpts or digests in anthologies or other volumes pursuant to Clause 11 (d), shall be subject to the Author's approval, such approval not to be unreasonably withheld. Failure of Author/Agent to reply with any objections within ten business days of Publisher's inquiry shall be deemed as Author approval. See 11 (a) with respect to licensing of paperback rights.

VPI   -   II   McIntosh & Otis Inc.   7/86 & 7/11   117840.000

Contract For Steinbeck tit        Page 7

*Reprint*

(a) Paperbound* hardcover, or large-type reprint publication: fifty percent (50%) of said receipts to the Author and fifty percent (50%) to the Publisher;

* Paperbound licenses to a third party shall be subject to the approval of the Author, or his agent acting on Author's behalf, such approval not to be unreasonably withheld, except (i) withholding of approval cannot be used to veto one Penguin USA paperback imprint from acquiring rights in a competitive situation where such imprint is acting as a third party and (b) in the event there is a proposed licensing to a third party which is disapproved by the Author, or his agent acting on Author's behalf, thereby putting the Work out of print and rights subsequently revert to the Author pursuant to the provisions of Clause 8A, the Author and/or his agent cannot license paperback rights to that party within twelve months of Author's, or his agent acting on Author's behalf, disapproval of Publisher's proposed license.

*Book Club*

(b) Book-club publication: fifty percent (50%) of said receipts to the Author and fifty percent (50%) to the Publisher;

*Fi  Serial*

(c) DELETED

*Second Serial,*
*Anthology, etc.*

(d) Periodical publication, including without limitation  magazine, newspaper, and digest after book publication, reprinting in whole or in part or excerpts or digests (but not abridgemnts which are prohibited) in anthologies or other volumes, pamphlets, etc., and public readings: fifty percent (50%) of said receipts to the Author and fifty percent (50%) to the Publisher;

*Audio-Visual*

(e) Reproduction of the text  or any adaptation of the work, or any derivative versions thereof, in any audio form provided it is a single voice, non-dramatic reading of the text and/or visual form provided it is a non-dramatic, non-illustrative, non-animated display of the text only (other than by motion picture, radio or television, or in storage and retrieval systems), including without limitation film strips, phonograph records, telecartridges and tapes: seventy five percent (75%) of said receipts to the Author and twenty five percent (25%) to the Publisher;  No performance rights are granted in connection with such rights.

Publisher acknowledges that specifically excluded from the audiorecording rights granted herein is the right to distribute the audiorecordings in the mail-order rental market, such rights having already been granted by Author to Books on Tape and with respect to CANNERY ROW and SWEET THURSDAY to Recorded Books, but shall not be otherwise restricted except that both the Publisher and Books on Tape and Recorded Books shall have the nonexclusive right to distribute the audio recordings in the library and specialty markets.

Elaine Steinbeck shall have prior approval of the script and artwork and packaging of any audio visual version of the Work.

VPI    -   II   McIntosh  &  Otis  Inc.    7/86  &  7/11   117840.000

Contract For Steinbeck tit        Page 8

Radio and
Te.   ion

      (f)  DELETED

Motion Picture
and Dramatic

      (g)  DELETED

In the event of the disposition of performance rights, the Publisher agrees to grant to the purchaser the privilege to publish excerpts and summaries of the Work or of any motion picture, dramatic, or television version of the Work, in the aggregate not to exceed ten percent (10%) of the text (but not more than 7,500 words), for advertising and exploiting such rights, provided that all steps necessary to protect the copyright of the Work are taken and that the Publisher is credited as the publisher of the Work.

Data Storage
and Retrieval

      (h)  Use of the text only in non-dramatic, non-illustrative, non-animated display through computer software and in other information storage and retrieval systems, whether through computer, mechanical, or other electronic means now known or hereafter invented and ephemeral screen-flashing or reproduction thereof, whether by printout, photo-reproduction or photocopy, including without limitation punch cards, microfilm, magnetic tapes, or like processes attaining similar results: seventy five percent (75%) of receipts to the Author and twenty five percent (25%) to the Publisher;

Elaine Steinbeck shall have prior approval of the script and artwork and packaging of any versions of the Work for data storage and retrieval.

Commercial Use

      (i)  DELETED

Use by the
Handicapped

      (j)  Publication or transcription of the Work in whole or in part without charge in braille, tapes, or other forms for use by the physically handicapped: none.

Ed⌒s in
English Abroad

      12. DELETED

Translation

      13. DELETED

Rights Reserved
by Author

      14. All rights not specifically granted to the Publisher under this agreement are reserved by the Author.

Pu⌒ty

      15. DELETED

Space
Advertising

16. Commercial advertisements (other than a list of other works published by the Publisher or its licensees) may not be inserted or printed in any edition of the Work without the Author's prior written consent.

Accounting and
Payment

17. The Publisher agrees to render semiannual statements of accounts on a work-by-work basis on the hardcover edition to April 30 and October 31 of each year, on or before August 31 and February 28 following, and statements of account on the paperbound edition published by the Publisher shall be rendered to June 30 and December 31 of each year, on or before October 31 and April 30 following, and the Publisher agrees to accompany such statements with checks in payment of the amounts due thereon. In making accountings, Publisher shall have the right to allow for a reasonable reserve against returns to be defined as a reserve sufficient in light of the actual return percentage in the sale of the Work and to be adjusted accordingly in each accounting period. After two years following the publication date regular royalty statements and payments need not be issued by the Publisher until accumulated earnings from all sources, due and payable, exceed $10.00, unless requested in writing by the Author. Should the Author receive an overpayment, the Author agrees that the Publisher may deduct such amount from any further earnings of the Work, it being understood that an unearned advance is not an "overpayment."

Works #1 - #18 will be jointly accounted and no sums, other than the yearly guarantees due pursuant to Clause 7, will be paid to the Author until the total amount (cumulative from the first payment) paid in guarantees to the Author has been earned from all sums accruing to the Author hereunder on Works #1 - #18 at the end of each royalty period.

Notwithstanding anything herein to the contrary, Publisher shall provide a separate semiannual statement and payment to Author for A RUSSIAN JOURNAL with the semiannual statements and payments provided with the other Works, which payment shall be deducted from the guaranteed advance payment provided in paragraph 7.

The Author may, upon written request, examine or cause to be examined through certified public accountants the Publisher's books of account insofar as they relate to the sale or licensing of the Work, provided such examinations are limited to one per year and take place during regular business hours. Such examination shall be at the Author's expense, unless errors of accounting amounting to more than five percent (5%) of the total sums accrued to the Author shall be found to the Author's disadvantage, in which case the reasonable cost of the examination shall be borne by the Publisher, and payment of the amount due shall be made within thirty (30) days thereafter.

Option on Other
Work

18. DELETED

Contract For <u>Steinbeck titl</u>     Page 10

*Termination of*
*Previous Agreements*

19.  This agreement, when signed by Author and Publisher, will cancel and
supercede the previous agreements, as amended, for the Works #1 - #18 covered
hereunder.

20.  Inasmuch as this agreement does not include all the contents of Work
#17 and Work #18, fifty percent of the royalty specified for Work #17, THE SHORT
NOVELS OF JOHN STEINBECK, and twenty five percent of the royalty specified for
Work #18, THE PORTABLE STEINBECK, will be due the Author hereunder.

Contract For Steinbeck titl    Page 11

PART TWO

Author's
Guarantee

1A. The Author represents and warrants that John Steinbeck is the sole author of the Work; that the Author is the sole owner of all rights granted hereunder; that the Author has not sold, licensed, assigned, or otherwise encumbered, and will not sell, license, assign, or otherwise encumber, any of such rights; that the Author has full power to enter into and to perform this agreement; that, except for any material expressly permitted or cleared pursuant to Clause 3 of Part One, the Work is original, and is not in the public domain; that the Work in no way violates any copyright or proprietary or contract or personal right of others, and that it contains nothing unlawful, libelous, or obscene. In the event of any claim, action, or proceeding based upon an alleged violation of any of these warranties, (a) the Publisher shall have the right to defend the same through counsel of its own choosing; (b) the Author shall hold harmless the Publisher, any seller of the Work, any licensee of a subsidiary right in the Work, and any other person to whom the Publisher or its licensees may extend the representations and warranties contained herein in connection with the production or distribution of the Work or the exercise of any rights therein or derived therefrom, against any damages and expenses (including reasonable legal fees and expenses) arising from the breach or alleged breach of any of the foregoing warranties. If any such claim, action, or proceeding is instituted, the Publisher shall promptly notify the Author, who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due the Author under this agreement between the parties. These warranties and indemnities shall survive the termination of this agreement.

Publisher agrees to designate Author as to the Work as an additional insured in any Errors and Omissions insurance policy which Publisher may purchase at its expense covering its book publishing activity and shall, except as limited hereinbelow, look solely to the proceeds of such insurance coverage for payment of any sums that may become due from Author by reason of the indemnification undertaken by the Author hereinabove regarding risks which are covered by Publisher's Errors and Omissions insurance policy except if the Author's breach of warranties set forth hereinabove is done wilfully. Author's obligation to indemnify Publisher shall be limited to thirty-seven thousand, five hundred dollars ($37,500) which sum is less than one-half (1/2) of the one hundred thousand dollar ($100,000) deductible presently in effect on the Errors and Omissions insurance policy. Notwithstanding the foregoing, Author acknowledges that the limits of liability may effectively be decreased or exhausted as a result of occurrences during a year related to other works and other additional insureds and that Author's liability to Publisher in excess of such coverage is not affected hereby. In consideration for the foregoing, Author agrees that they will fully cooperate with Publisher in the defense of any such claims, the Publisher and/or its insurer shall have the right to select counsel, and that Publisher shall have the right to settle any claim upon the terms and conditions it and/or its insurer deems satisfactory.

VPI   -   II   McIntosh & Otis Inc.   7/86 & 7/11   117840.000

Contract For Steinbeck titl        Page 12

*Defense of*
*Copyright*

        2A. In case of any infringement of the copyright of the Work by others, the Publisher may in its discretion sue or employ such remedies as it deems expedient, and all such suits or proceedings shall be at the joint expense of Author and Publisher, and the net proceeds of any recovery shall be divided equally between them, but the Author shall not be liable for any expenditure for such purposes in excess of one thousand dollars ($1,000.00) undertaken by the Publisher without the Author's previous consent in writing. If the Author does not consent to all expenditures for such purposes, any recovery shall be divided between the Publisher and the Author in the ratio of their respective expenditures for such purposes.

*Competitive*
*Material*

        3A. DELETED

*Prior*
*Publication*

        4A. DELETED

*Default by the*
*Publisher*

        5A. If the Publisher should fail to pay undisputed monies due or to deliver statements as agreed (unless such failure is due to a good-faith dispute between the Author and the Publisher) within 60 days from the date of written demand by the Author or his/her representatives, this agreement shall be canceled and all rights in the Work granted herein shall revert to the Author forthwith and without further notice, and without prejudice to monies due to the Author from the Publisher.

*Author's*
*Property*

        6A. DELETED

*Revised Edition*

        7A. DELETED

*Termination of*
*this Agreement*

        8A. Should the Publisher fail to keep in print any one of Works #1 through #18 or any of the other Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck dated October 24, 1994 and after written demand from the Author decline or neglect to bring such Work back into print within one year, the Publisher's rights shall terminate hereunder as well as terminate for the other Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck dated October 24, 1994, provided that all obligations of the Author to the Publisher have been met. Upon the effective date of termination, the Publisher shall have the right to dispose of any copies remaining on hand of the in print Works and any copies in process of the Works covered hereunder as well as any other in print or in process Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck dated October 24, 1994 subject to the payment of royalties as provided hereunder and as provided in the agreement

with Elaine Steinbeck dated October 24, 1994.  It is understood that any Work shall be considered to be in print if any hardcover or softcover publication rights granted hereunder are being exercised or are under contract to be exercised.

If, at any time after first publication, the Publisher wishes to discontinue publication for any reason of any Work which is the subject of this agreement or a separate agreement with Elaine Steinbeck dated October 24, 1994, the Publisher may do so upon written notice to the Author, in which event this agreement and the other agreement for the Steinbeck works dated October 24, 1994 with Elaine Steinbeck shall terminate and all rights granted hereunder shall revert to the Author upon the termination date set forth in such notice from the Publisher. If such termination occurs, the provisions of the immediately following paragraph of this Clause 8A shall apply.

For thirty (30) days after the date of such termination, the Author shall have the right, but not the obligation, to acquire from the Publisher (a) any print-er's materials under the control of the Publisher, at the fair market value thereof; and/or (b) any inventory of the work under the control of the Publish-er, at the manufacturing cost of last printing. If the Author does not exercise such right within such thirty (30) days, the Publisher may dispose of any such materials or inventory without any further obligation to the Author.

**Termination Under U.S. Law**

9A. If Elaine Steinbeck and/or Thomas Steinbeck exercise their right to terminate grants made to Publisher in this agreement (in accordance with Section 304(c) of Title 17 of the U.S. Code) and if the Terminating party(ies) fail(s) to enter into an agreement with Publisher for Publisher to continue to publish the terminated work(s), then Publisher may take the following actions:

1. The amount by which the Guaranteed Advance Payments exceed royalties due and/or paid to all Authors from the date of this contract until the date a Notice of Termination is received by Publisher ("Excess Guaranteed Payments") shall be calculated on a work-by-work basis (pro-rated in proportion to the royalties generated by each work during the period).  The amount of the Excess Guaranteed Payment attributable to the terminated work (even if received by other than the terminating party) shall be, at Publisher's option, recoverable by Publisher from any royalties and/or further Guaranteed Advance Payments owed to the terminating party or parties (as pro-rated) from that date forward, on account of the terminating party(ies)'s interest in the terminated work (if any) during the period between notice of termination and recapture and/or on account of the terminating party(ies)'s pro-rata interest in any non-terminated works that are the subject of this agreement.

2. In addition to the right to recapture the excess over earnings on Guaranteed Advances as provided above, in the event the terminating party(ies) wish to transfer the recaptured rights to a third party, they shall first offer them to Publisher in the following manner:
(i)  If terminating party(ies) decide(s) to accept a bona fide offer with respect to all or part of the terminated work(s) then in each such instance terminating party(ies) shall, promptly after deciding to accept such offer, give Publisher written notice specifying such terms and conditions which terminating party(ies) is(are) prepared to accept and the name(s) of the third party who made the offer to terminating party(ies).  At any time within fifteen (15) days after receipt of such written notice from terminating party(ies), Publisher may notify terminating party(ies) in writing of its acceptance of such offer and, in such event, the rights referred to in such offer shall be assigned to Publisher,

subject to Publisher's compliance with the terms of the offer so accepted. If Publisher shall acquire from terminating party(ies) all or part of the terminated work(s), then both parties agree to enter into a written agreement with respect thereto.

(ii)   If Publisher shall elect not to purchase the terminated work(s), the terminating party(ies) may dispose of said terminated work(s) but only to the offerer and upon the terms and conditions specified in such notice, it being understood and agreed that terminating party(ies) may not dispose of such rights to any other party or upon terms and conditions any different from those offered to Publisher hereunder without again offering such terminated work(s) to Publisher as herein provided.

**Bankruptcy and Liquidation**

10A. In the event that the Publisher shall be adjudicated a bankrupt, a receiver or a trustee shall be appointed for all or substantially all of the Publisher's property, and the order appointing the receiver or trustee shall not have been vacated within sixty (60) days from its entry, or if the Publisher shall seek to take advantage of any so-called insolvency law, all rights hereby granted to the Publisher shall forthwith revert to the Author, and this agreement shall thereupon terminate.

**Governing Law**

11A. This agreement shall be interpreted under the laws of the State of New York applicable to contracts entirely made and performed therein. Any dispute between the Author and the Publisher relating to this agreement and/or the Work, if it cannot be settled by mutual agreement between the Author and the Publisher, shall be submitted solely to the Federal or State courts sitting in New York City, or courts with appellate jurisdiction therefrom, and the Author and the Publisher both consent to the jurisdiction and venue of such courts for such purpose.

**Complete Agreement**

12A. This agreement constitutes the complete understanding of the parties, and no waivers or modifications of any provision shall be valid unless in writing, signed by the Author and the Publisher. The waiver of a breach or of a default under any provision hereof shall not be deemed a waiver of any subsequent breach or default. The payment of any advances or royalties hereunder shall not be deemed a waiver by the Publisher of any rights and/or claims that it may have with respect to nonperformance by the Author of the Author's obligations hereunder.

**Assignment**

13A. This agreement shall be binding upon the heirs, executors, or administrators of the Author, and upon the successors and assigns of the Publisher. The Author shall not assign this agreement, or obligations hereunder, without the prior written consent of the Publisher. The Publisher shall have the right on notice to Author to assign this agreement, or its rights and obligations hereunder, only to a company acquiring all or substantially all of the Publisher's assets. The Author shall have the right to assign any amounts due hereunder to the extent such amounts become due after the Publisher has received written notice from the Author of such assignment.

Contract For Steinbeck titl      Page 15

14A. All sums of money due under this agreement shall be paid to the Author's agent, McIntosh & Otis, Inc., 310 Madison Avenue, New York, New York 10017 and the receipt of the said McIntosh & Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh & Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement.

The Author does hereby irrevocably assign and transfer to McIntosh & Otis, Inc. and McIntosh & Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written.

IN THE PRESENCE OF:

_____ Witness

ELAINE STEINBECK

_Elaine C. Steinbeck_

_____ Witness

THOMAS STEINBECK

_Elaine Steinbeck P.O._

Elaine Steinbeck as Attorney-in fact for Thomas Steinbeck

VIKING PENGUIN

_____ Witness

Barbara Grossman
Senior Vice President
Publisher, Viking

ALAN J. KAUFMAN
Senior Vice President & General Couns

# Exhibit D

RATIFICATION
AND
ACCEPTANCE
OF
AGREEMENT


Thom Steinbeck, a/k/a Thomas Steinbeck, a/k/a Thomas Myles Steinbeck, individually and as attorney-in-fact for Nancy Steinbeck, hereby confirms, approves, ratifies and accepts all terms and conditions of the agreement  dated the 24th day of October 1994, between Elaine Steinbeck and Thomas Steinbeck as Author and/or Proprietor and Viking Penguin as Publisher relating to the publication of the eighteen literary works written by John Steinbeck, and agrees individually and on behalf of Nancy Steinbeck as her attorney-in-fact to be fully bound by all of the terms and provisions thereof.


_____       12/22/94
Thom Steinbeck                        date


Nancy Steinbeck

_____       12/22/94
by Thomas Myles Steinbeck             date
Attorney-in-fact

# Exhibit E

<u>Power of Attorney</u>

I, Thom Steinbeck, hereby irrevocably appoint Elaine Steinbeck my attorney-in-fact to act in my place, to the extent I am permitted by law to act through an agent or attorney-in-fact, as follows: to exercise my rights of renewal and rights to terminate grants to third parties and make new contracts and grants and assignments of copyrights, and to negotiate and sign contracts and agreements and otherwise take and authorize action on my behalf, directly or through such agents or attorneys-in-fact as she, in her sole discretion, may appoint, all solely with respect to the works of John Steinbeck in which I now have or will have renewal or termination rights under the U.S. Copyright Law.

Thomas Steinbeck
Thom Steinbeck

Dated:

February 22, 1983

EXHIBIT A

# Exhibit F

# NOTICE OF TERMINATION

TO: Karen Meyer, Esq.
Viking Penguin, a division of Penguin Books, USA
375 Hudson Street
New York, New York 10014

**Received**

JUN 2 4 2004

**Karen R. Mayer**

Estate of Elaine Steinbeck
c/o McIntosh & Otis, Inc.
323 Lexington Ave.
New York, New York 10016

PLEASE TAKE NOTICE that pursuant to 17 U.S.C. §304(d), Thomas Steinbeck and Blake Smyle, he being the sole surviving child of deceased author John Steinbeck, and she being the sole surviving child of deceased John Steinbeck IV, who was the only other child of deceased author John Steinbeck, terminate grants made to you before January 1, 1978 in the works described below:

| Title | Author | Date Copyright Secured | Copyright (Renewal) Reg. # | Effective Date of Termination |
|---|---|---|---|---|
| Cup of Gold | John Steinbeck | August 2, 1929 | A:12065 (R:155442) | July 1, 2006 |
| The Pastures of Heaven | John Steinbeck | | A:56747 (R:262343) | Nov. 1, 2007 |
| The Red Pony and all stories included therein, namely: | John Steinbeck | Sept. 24, 1937 | A:109632 (R:359892) | Sept. 25, 2012 |
| "The Gift" | John Steinbeck | Oct. 18, 1933 | B:204366 (R:265334) | Oct. 19, 2008 |
| "The Great Mountains" | John Steinbeck | Nov. 16, 1933 | B:206800 (R:271364) | Nov. 17, 2008 |
| "The Promise" | John Steinbeck | July 20, 1937 | B:345443 (R:345803) | July 21, 2012 |
| To A God Unknown | John Steinbeck | Sept. 15, 1933 | A:66672 (R:26781) | Sept. 16, 2008 |
| Tortilla Flat | John Steinbeck | May 28, 1935 | A:84009 | May 29, 2010 |
| In Dubious Battle | John Steinbeck | Jan. 28, 1936 | A:91536 (R:319085) | Jan. 29, 2011 |
| Of Mice And Men | John Steinbeck | Feb. 26, 1937 | A:102928 (R:342179) | Feb. 27, 2012 |
| Of Mice and Men (Play) | John Steinbeck | Dec. 10, 1937 | DP:53848 (R:359895) | Dec. 11, 2012 |

| Title | Author | Date Copyright Secured | Copyright (Renewal) Reg. # | Effective Date of Termination |
|---|---|---|---|---|
| The Long Valley and all stories included therein, namely: | John Steinbeck | Sept. 16, 1938 | (A:121979) (R:359895) | Sept, 17, 2013 |
| "Chrysanthemums" | John Steinbeck | | | |
| "White Quail" | John Steinbeck | | | |
| "Flight" | John Steinbeck | | | |
| "Snake" | John Steinbeck | | | |
| "Breakfast" | John Steinbeck | | | |
| "Raid" | John Steinbeck | | | |
| "Harness" | John Steinbeck | | | |
| "Vigilante" | John Steinbeck | | | |
| "Johnny Bear" | John Steinbeck | | | |
| "Murder" | John Steinbeck | | | |
| "Saint Katy The Virgin" | John Steinbeck | | | |
| "Red Pony" (In 3 parts) | John Steinbeck | | | |
| "Leader of the People" | John Steinbeck | | | |
| The Grapes of Wrath | John Steinbeck | April 14, 1939 | A:129068 (R:359892) | April 15, 2014 |

Deceased author John Steinbeck's widow Elaine Steinbeck being deceased, and there being no other surviving child or grandchild of deceased author John Steinbeck, Thomas Steinbeck and Blake Smyle are all of the persons whose signatures are necessary to terminate the grants described herein under 17 U.S.C. §304. Termination of renewal term rights under 17 U.S.C. §304(c) has not been exercised as to such grants before.

All grants of rights made to you or your predecessors in interest in the above described works before January 1, 1978, including but not limited to any and all grants of book publication rights, motion picture rights, television rights, dramatic rights, theatrical stage rights, radio broadcast rights, mechanical reproduction rights, or other rights of any nature in said works, as well as all amendments, revisions, or renewals of such grants, are terminated by this notice. Such grants include, but are not limited to 1) that certain contract dated September 12, 1938 between John Steinbeck and Viking Press, Inc.; 2) that certain agreement dated May 19, 1949 between John Steinbeck and Viking Press, Inc.; and 3) all other agreements entered into between John Steinbeck and Viking Press, Inc., or its predecessors in interest, successors in interest, or assignors before January 1, 1978, as well as all amendments, revisions, or renewals of or to said agreements.

Dated: June 8, 2004

Thomas Steinbeck
Thomas Steinbeck

Dated: JUL 13, 2004

Blake Smyle
by Thomas Steinbeck
her Attorney-In-Fact